IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADELAIDA MUNIZ, | : | CIVIL ACTION |
| | : | NO. 11-7920 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    DECEMBER 19, 2012

## I. INTRODUCTION

Plaintiff Adelaida Muniz filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Upon consideration of the administrative record, submitted pleadings, Magistrate Judge Linda K. Caracappa's Report and Recommendation, ECF No. 13, and objections thereto, ECF No. 14, the Court adopts Judge Caracappa's Report and Recommendation ("R&R"). Plaintiff's request for review is denied and judgment is entered in favor of the Commissioner.

## II. BACKGROUND

Plaintiff was born on September 23, 1962. R&R 1. She has a sixth-grade education and lives alone. Id. Plaintiff worked in the past as a machine feeder. Id.

Plaintiff was forty-five years old at the time of her alleged onset date and forty-seven at the time of her administrative hearing. Pl.'s Br. 1, ECF No. 9. Plaintiff filed applications for disability and Social Security Income benefits on November 5, 2008, alleging disability beginning on October 26, 2007. R&R 1-2. Plaintiff claimed she was disabled due to pinched nerves in her back, back problems, asthma, and depression. Id. 2. After her application was denied at the state level on March 20, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id.

On April 22, 2010, a hearing was held before ALJ Alexander Nunez. Id. Plaintiff was represented by counsel and testified. Id. A vocational expert also testified. Id. On June 22, 2010, ALJ Nunez denied Plaintiff's application for DIB and SSI benefits. R. App. 2 at 23.[1] After finding that Plaintiff suffered from degenerative disc disease, asthma, obesity, and a major depressive disorder, ALJ Nunez determined that Plaintiff had residual functional capacity to perform light work, limited

---

[1] Citation to the Administrative Record. See ECF No. 8.

to simple, repetitive, unskilled tasks. Id. at 21, 23.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but his request was denied. On April 20, 2012, Plaintiff filed a complaint seeking review in this Court. Pl.'s Br. Plaintiff alleged two principal errors in ALJ Nunez's decision: (1) that the ALJ erred in failing to properly assess the effects of Plaintiff's obesity in combination with Plaintiff's other impairments at step five of the sequential evaluation; and (2) that the ALJ erred in failing to rule that bilateral peroneal neuropathy was a severe medical impairment and by failing to consider its impact on Plaintiff's residual functional capacity. Pl.'s Br. 4, 6. The Court, pursuant to Rule 72.1 of the Local Rules of Civil Procedure, and 28 U.S.C. § 636(b)(1)(B), referred the matter to Magistrate Judge Linda K. Caracappa for a Report and Recommendation. See Order, May 17, 2012, ECF No. 11.

On July 25, 2012, Judge Caracappa issued her report, recommending that the Court deny Plaintiff's request for review. R&R, ECF No. 13. Briefly, Judge Caracappa held that ALJ Nunez adequately considered the cumulative effect of Plaintiff's obesity on her other impairments. Further, she found that Plaintiff had not asserted bilateral peroneal neuropathy as one of the conditions affecting her ability to work and that "the ALJ did not commit a nonharmless error. . . by failing to find

neuropathy to be a severe impairment." R&R 20.

Plaintiff filed objections to Judge Caracappa's R&R. ECF No. 14. The Commissioner responded to Plaintiff's objections. Def.'s Resp., ECF No. 15. The matter is now ripe for disposition.

**III. STANDARD OF REVIEW**

The Court undertakes a de novo review of the portions of the Report and Recommendation to which Plaintiff has objected. See 28 U.S.C. § 636(b)(1) (2006); Cont'l Cas. Co. v. Dominick D'Andrea, Inc., 150 F.3d 245, 250 (3d Cir. 1998). The Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's final determination that a person is not disabled[2] and, therefore, not entitled to

---

[2] A claimant is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Basic Definition of Disability for Adults, 20 C.F.R. § 416.905 (2012); Basic Definition of Disability, 20 C.F.R. § 404.1505 (2012).

Once the claimant satisfies her burden by showing an inability to return to her past relevant work, the burden shifts to the Commissioner to show the claimant (given her age, education, and work experience) has the ability to perform specific jobs existing in the economy. 20 C.F.R. §§ 416.920,

4

SSI benefits, the Court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Instead, the Court must review the factual findings presented in order to determine whether they are supported by substantial evidence. See 42 U.S.C. § 405(g) (2006); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence constitutes that which a "reasonable mind might accept as adequate to support a conclusion." Rutherford, 399 F.3d at 552 (internal quotation marks omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Id. (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside even if the Court would have decided the factual inquiry differently. See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see also Rutherford, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992))).

---

404.1520; see Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).

Because Judge Caracappa properly outlined the standards for establishing a disability under the Social Security Act and summarized the five-step sequential process for evaluating disability claims, the Court will not duplicate these efforts here. See Santiago v. Barnhart, 367 F. Supp. 2d 728, 732 (E.D. Pa. 2005) (Robreno, J.) (outlining standards and five-step sequential process for evaluating disability claims).

**IV. DISCUSSION**

Magistrate Judge Caracappa recommends that Plaintiff's motion for request for review be denied and that judgment be entered in this matter in favor of Defendant.

The thrust of Plaintiff's objections to Magistrate Judge Caracappa's Report and Recommendation is a reiteration of the arguments proffered in Plaintiff's original memorandum and reply. First, she argues that the ALJ committed a reversible and harmful error of law by failing to consider the impact of Plaintiff's morbid obesity in combination with her other impairments at step five of the sequential evaluation. Second, Plaintiff argues that the ALJ's failure (1) to find that bilateral peroneal neuropathy represented a severe medical impairment and (2) to discuss and evaluate its impact on her ability to work represents a reversible and harmful error. The Court will address each in turn.

A.  Consideration of Plaintiff's Obesity in the ALJ's Sequential Evaluation

Plaintiff avers that ALJ Nunez did not properly take into account Plaintiff's obesity in combination with her other impairments at steps four and five of the sequential evaluation. Specifically, Plaintiff states that the ALJ failed in her obligation to consider and explain, as part of her step five evaluation, the interplay of Plaintiff's morbid obesity, degenerative disc disease, asthma, and depression. Pl.'s Objections 3.

Plaintiff relies heavily on Diaz v. Commissioner of Social Security, where the Third Circuit held that the ALJ erred in failing to discuss the impact of claimant's obesity in combination with her other impairments. 577 F.3d 500, 504 (3d Cir. 2009). Writing for the court, Judge Rendell explained, "an ALJ must meaningfully consider the effects of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and every subsequent step." Id. To "meaningfully consider the effects," an ALJ must discuss the evidence and explain his reasoning in such a manner that would be "sufficient to enable meaningful judicial review." Id. (citing Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000)). "An obesity analysis is especially important when the other impairments are musculoskeletal,

7

respiratory, and cardiovascular impairments." Ellis v. Astrue, No. 09-1212, 2010 WL 1817246, at *5 (E.D. Pa. Apr. 30, 2010).

ALJ Nunez listed obesity as a severe impairment in step two of the evaluation process and then proceeded to discuss its effects on other impairments at step three. R. App. 2 at 17. Pursuant to Social Security Ruling 02-1p, the ALJ considered Plaintiff's obesity in conjunction with related impairments including her degenerative disc disease and her asthma. Id. Magistrate Judge Caracappa found that the ALJ "indeed considered the cumulative effect of obesity on [P]laintiff's other impairments." R&R 17.

Plaintiff avers that Judge Caracappa has drawn a meaningless distinction between this case and Diaz, by stating that the ALJ's consideration of Plaintiff's obesity at step three was sufficient to meet the required analysis set out in that case. Pl.'s Objections 3. Plaintiff misstates Judge Caracappa's analysis, however, as the Judge noted the ALJ's consideration of Plaintiff's obesity in subsequent steps as well: "[W]e find that the ALJ's mention of obesity was sufficient at step four such that we are reassured that the ALJ considered obesity." R&R 18. Judge Caracappa noted that the ALJ mentioned Plaintiff's weight issues several times in her Residual Functional Capacity ("RFC") analysis. Id. Specifically, the ALJ referenced consultative examiner Dr. Fischetto's notes

8

stating "that claimant was obese." Id.

Plaintiff notes that Dr. Fischetto performed a mental examination, and draws the conclusion that the ALJ thus did not consider the full impact of Plaintiff's obesity on her physical ability to function. Pl.'s Objections 4. As the Commissioner notes, however, the ALJ's reference to Dr. Fischetto's findings confirms that she did indeed fully consider the impact of Plaintiff's obesity on her overall functional capacity. Def.'s Resp. to Pl.'s Objections 2 n.1. SSR 02-1p provides that obesity may effect mental impairments. Id. If anything, the ALJ's consideration of Dr. Fischetto's mental examination only demonstrates that the ALJ did not ignore Plaintiff's obesity.

In Diaz, the court made clear, "[w]ere there any discussion of the combined effect of Diaz's impairments, we might agree with the District Court" that the ALJ's consideration of obesity was sufficient. 577 F.3d at 504. "The ALJ, of course, need not employ particular 'magic' words." Id. Plaintiff claims that the ALJ's "cursory references to obesity [did] not satisfy [her] obligation to conduct a meaningful analysis of the impact of obesity on Plaintiff's ability to perform other jobs at step five." Pl.'s Objections 4. Defendant responds that the ALJ's decision must not be read in a vacuum; rather the ALJ's discussion at each step should be read in conjunction with her discussion at every other step.

Step five of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. R. App. 2 at 16. To the extent that residual functional capacity is a determination based on cumulative analysis of Plaintiff's impairments, it seems that the proper analysis could occur at step five without explicit use of the word "obesity" so long as its effects were taken into consideration.

Plaintiff states that in her initial brief, she argued that her obesity exacerbated problems experienced with walking and standing due to pain in her legs such that she might be limited to sedentary work or less. Pl.'s Objections 4. Judge Caracappa found that the ALJ had indeed noted "[P]laintiff's assertion that due to back pain, she cannot lift, squat, bend, stand, reach walk, sit, or kneel." R&R 18. The ALJ found that there was not sufficient evidence from Plaintiff's treating physicians or others to support this assertion. Id. The Court therefore agrees with Judge Caracappa in her finding that the ALJ adequately considered Plaintiff's obesity in making her residual functional capacity determination, and thus adequately considered Plaintiff's obesity in her step five analysis.[3]

---

[3] Plaintiff cites a number of cases which may be distinguished from the case at hand. In Watson v. Astrue,

Requiring more would result in the need for ALJs to employ the "magic" words that Diaz expressly rejected. 577 F.3d at 504.

B. Consideration of Plaintiff's Bilateral Peroneal Neuropathy

Plaintiff argues that the ALJ committed a reversible error of law in failing to find Plaintiff's bilateral peroneal neuropathy to be a severe impairment and in failing to properly evaluate its impact on her ability to work. Pl.'s Objections, 6.

As to the first aspect of Plaintiff's claim, the ALJ was only required to classify one severe impairment and complied with that obligation. R&R 20. As Judge Caracappa explained:

> [T]he evaluation at step two as to whether plaintiff is suffering from a severe impairment is a threshold analysis… To that end, as long as a claim is not denied at step two, it is not generally necessary for the ALJ to have found any additional alleged impairment to be severe as long as the ALJ proceeded with the evaluation based on all of the claimant's

---

Magistrate Judge Perkin found that the plaintiff's motion for remand should be granted because the effects of the plaintiff's obesity was not actually considered in conjunction with her other impairments in making her residual functional capacity determination. No. 10-4720, 2009 WL 678717 (E.D. Pa. Feb. 8, 2012) (order approving and adopting magistrate judge's report and recommendation); see also Eads v. Astrue, No. 11-1968 (E.D. Pa. Jan. 20, 2012) (order adopting and approving magistrate judge's report and recommendation which stated that ALJ failed to consider obesity properly in RFC analysis). In Medica v. Astrue, the ALJ did not explicitly state how the plaintiff's obesity had been taken into consideration in combination with her other impairments. No. 10-4744 (E.D. Pa. July 26, 2011). In the instant case, the ALJ considered the effect of Plaintiff's obesity in combination with her other impairments and there is substantial evidence to support her conclusion that Plaintiff's obesity had no prohibitive effect on her ability to work.

11

impairments—both severe and non-severe.

R&R 20 (citing 20 C.F.R. § 404.1520(c); Salles v Comm'r of Soc. Sec., 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007); Lee v. Astrue, No. 06-5167, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); Esposito v. Apfel, No. 99-771, 2000 WL 218119, at *7 (E.D. Pa. Feb. 24, 2000)).

Because the ALJ considered the pain which would be associated with the neuropathy that Plaintiff describes, she did not commit a harmful error. Judge Caracappa stated that the diagnosis of bilateral peroneal neuropathy appears nowhere in the record except in a May 2007 diagnosis by one doctor. R&R 20. Plaintiff argues that treatment notes from September 25, 2008, November 17, 2008, and November 24, 2009 also suggest diagnoses of neuropathy. Pl.'s Objections 10. In each of those treatment notes, however, the electromyogram test is listed under "Past Medical History." R. at 387, 600, 655. As the Commissioner points out, no mention of neuropathy is made in the "Impressions & Recommendations" section of those treatment notes. Def.'s Resp. 4 (citing R. at 601-02, 657-58, 689-90).

Plaintiff further argues that the ALJ should not have rejected medical evidence pertaining to Plaintiff's alleged neuropathy without providing a reason for discounting such evidence. Pl.'s Objections 11. Plaintiff cites Cotter v. Harris to support the proposition that an ALJ must explicitly explain

12

why she has rejected specific pieces of evidence. 642 F.2d 700 (3d Cir. 1981). However, in Cotter, the court held specifically that, "there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." Id. at 706 (emphasis added). That is, the ALJ must explain why probative evidence has been rejected in order for the district court to be able to effectively perform its reviewing function. Where evidence is not probative, this obligation would not apply. In fact, the court gave an illustration of where an ALJ would need to explicitly denote reasons for rejecting a piece of evidence:

> To state the issue simplistically but clearly, if the record contained the evidence of six medical experts, one of whom supported the claimant and five of whom did not, it would be of little assistance to our review function were the ALJ merely to state that s/he credited the one supporting expert because that evidence adequately demonstrated disability, but failed to either mention or explain why the evidence of the other five experts was rejected.

Id. In this instance, the ALJ was faced with several treatment notes, only one of which, R. at 369, mentioned neuropathy. See, e.g., R. at 224-25, 356-60, 363-390, 395-420, 426-32, 535-69. It would be reasonable for the ALJ to dismiss the single diagnosis, where the bulk of the evidence weighed against it. The single diagnosis in this instance was not probative.

13

Moreover, the ALJ considered Plaintiff's complaints regarding the pain associated with the alleged neuropathy and found that there were no work preclusive functional limitations. At the administrative hearing, the ALJ questioned Plaintiff specifically regarding her leg pain. R. at 38-39. Plaintiff explained that she took medication for the pain and that when medicated, her pain was a four on a scale of ten. Id. Plaintiff further described her difficulty in walking. Id. at 41-42. The ALJ noted that Plaintiff's back pain radiated into her left leg and foot and acknowledged the treatment notes of pain management specialist, Dr. Ko, and treating physician, Dr. Ambarian. Id. at 19. Dr. Ko diagnosed Plaintiff with radiculopathy and prescribed steroid injections and nerve root block injections, noting Plaintiff's slow but stable gait and tenderness in the left knee. Id. at 19-20. Dr. Ko further noted that Plaintiff's pain control when using Percocet was adequate. Id. at 20. Dr. Ambarian's notes confirmed that Plaintiff's ability to stand and walk were not prohibitive. Id. at 224-225. As Judge Caracappa found, the ALJ acknowledged that the symptoms Plaintiff asserts are from peroneal neuropathy, but found that Plaintiff's pain was under control. The Court agrees with Judge Caracappa that the ALJ's decision was supported by substantial evidence. R&R 21.

**V.  CONCLUSION**

For the foregoing reasons, the Court approves and adopts Magistrate Judge Caracappa's Report and Recommendation. Plaintiff's request for review is denied. An appropriate order will follow.